**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

IN RE:　COOK INCORPORATED,
　　　　PELVIC REPAIR SYSTEM
　　　　PRODUCTS LIABILITY LITIGATION　　　MDL No. 2440

THIS DOCUMENT RELATES TO:

*Delana R. Thompson v. Cook Inc., et al.*　　　Civil Action No. 2:13-cv-31208

**ORDER**

On July 18, 2017, the court conducted a mandatory settlement conference as to the plaintiff's claims against defendants Cook Incorporated, Cook Biotech, Inc., and Cook Medical, LLC (formerly known as Cook Medical, Inc.) ("Cook"), which the plaintiff was ordered to attend. When the plaintiff, who is pro se, did not appear in person at the settlement conference, counsel for Cook moved to show cause and, if the plaintiff does not comply, dismiss the plaintiff's case with prejudice. For the reasons stated below, Cook's motion to show cause is **GRANTED** and Cook's motion to dismiss is **TAKEN UNDER ADVISEMENT**.

**I.　Background**

This case resides in the Cook MDL, one of seven MDLs assigned to me by the Judicial Panel on Multidistrict Litigation concerning the use of transvaginal surgical mesh to treat pelvic organ prolapse and stress urinary incontinence. In the seven MDLs, there are more than 50,000 cases currently pending, approximately 500 of which are in the Cook MDL. Managing this many cases in multidistrict litigation requires the court to streamline certain procedures, such as ordering mandatory settlement conferences, to improve efficiency for the parties and the court.

On June 12, 2017, I entered Pretrial Order ("PTO") # 80 directing all plaintiffs in the Cook MDL alleging claim(s) against Cook to engage in good faith settlement negotiations with Cook on or before June 30, 2017. MDL 2440, PTO # 80 ¶ 1 [ECF No. 501]. PTO # 80 also notified the parties that the court would conduct settlement conferences on July 18, 2017 for all unresolved cases. *Id.* at ¶¶ 2–3. On July 13, 2017, I entered PTO # 82 notifying the plaintiff again about the mandatory settlement conference on July 18, 2017 and her obligation to attend. MDL 2440, PTO # 82 [ECF No. 507]. I entered PTO # 82 in the main MDL and in the plaintiff's individual case. PTO # 82 explicitly states, "individual plaintiffs whose cases are scheduled for a settlement conference shall appear in person for the settlement conference" and that "any plaintiff who fails to comply with this PTO may be subject to a substantial sanction, including dismissal with prejudice." *Id.* at 1–2.

Ms. Thompson did not engage in good faith settlement discussions with Cook, nor did she appear in person for the mandatory settlement conference with them on July 18, 2017. During this proceeding, the court called the plaintiff's name in the courtroom and had a Court Security Officer call the plaintiff's name three times in the lobby outside the courtroom. The plaintiff was not present. Cook moved to show cause and, if the plaintiff does not comply, Cook moved for sanctions against Ms. Thompson, specifically requesting dismissal of the plaintiff's case with prejudice.

**II.     Legal Standard**

Federal Rule of Civil Procedure Rule 16(a)(5) permits the court to issue orders regarding pretrial conferences for the purpose of facilitating settlement. Fed. R. Civ. P. 16(a)(5). Rule 16(f) provides a court may issue any just order, including those authorized by Rule 37(b)(2)(A)(ii)–(vii) if a party fails to appear at a pretrial conference or fails to obey a scheduling or other pretrial order.

*Id.* 16(a)(5), (f). Rule 37(b)(2) sets forth a list of sanctions available when a party fails to comply with a court order, including "dismissing the action or proceeding in whole or in part." Fed. R. Civ. P. 37(b)(2)(A)(v). Before levying dismissal or default as a sanction under Rule 37, a court must first consider four factors:

> (1) Whether the noncomplying party acted in bad faith; (2) the amount of prejudice his noncompliance caused his adversary, which necessarily includes an inquiry into the materiality of the evidence he failed to produce; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions.

*Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc.*, 872 F.2d 88, 92 (4th Cir. 1989) (citing *Wilson v. Volkswagon of America, Inc.*, 561 F.2d 494, 503–04 (4th Cir. 1977), *cert. denied*, 434 U.S. 102 (1978)).

In applying these factors to this case, I must be cognizant of the realities of multidistrict litigation and the unique problems an MDL judge faces. Specifically, when handling seven MDLs, case management becomes of utmost importance. *See In re Phenylpropanolamine Prods. Liab. Litig.*, 460 F.3d 1217, 1231 (9th Cir. 2006) (emphasizing the "enormous" task of an MDL court in "figur[ing] out a way to move thousands of cases toward resolution on the merits while at the same time respecting their individuality"). I must define rules for discovery and settlement conferences and strictly adhere to those rules, with the purpose of ensuring that pretrial litigation flows as smoothly and efficiently as possible. *See id.* at 1232 ("[T]he district judge must establish schedules with firm cutoff dates if the coordinated cases are to move in a diligent fashion toward resolution by motion, settlement, or trial."); *see also* Fed. R. Civ. P. 1 (stating that the Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding"). In turn, counsel must collaborate with the court "in fashioning workable programmatic procedures" and cooperate

3

with these procedures thereafter. *In re Phenylpropanolamine*, 460 F.3d at 1231–32. Pretrial orders—and the parties' compliance with those orders and their deadlines—"are the engine that drives disposition on the merits." *Id.* at 1232. A "willingness to resort to sanctions" in the event of noncompliance can ensure that the engine remains in tune, resulting in better administration of the vehicle of multidistrict litigation. *Id.*; *see also Freeman v. Wyeth*, 764 F.3d 806, 810 (8th Cir. 2014) ("The MDL judge must be given 'greater discretion' to create and enforce deadlines in order to administrate the litigation effectively. This necessarily includes the power to dismiss cases where litigants do not follow the court's orders.").

### III. Discussion

PTO # 82 required Ms. Thompson to attend a mandatory settlement conference on July 18, 2017. PTO # 82 explicitly stated: "any plaintiff who fails to comply with this PTO may be subject to a substantial sanction, including dismissal with prejudice." PTO # 82 at 1–2. Applying the *Wilson* factors to these facts and bearing in mind the unique context of multidistrict litigation, I conclude that sanctions under Rule 37 are justified.

The first factor—bad faith—is difficult to ascertain given that the plaintiff was not present in court to respond to the defendants' motion. While I am cognizant of the difficulties that are presented by a plaintiff not being represented by counsel, those difficulties do not excuse the plaintiff herself from her obligation to pursue her case actively. *See Link v. Wabash R.R. Co.*, 370 U.S. 626, 634 n.10 (1962) ("[A] civil plaintiff may be deprived of his claim if he failed to see to it that his lawyer acted with dispatch in the prosecution of his lawsuit."). Simply stated, a pro se litigant is not immune from sanctions for failure to comply with court orders. "Pro se litigants are entitled to some deference from courts. But they as well as other litigants are subject to the time requirements and respect for court orders without which effective judicial administration would

4

be impossible." *Ballard v. Carlson*, 882 F.2d 93, 96 (4th Cir. 1989) (internal citations omitted). PTO # 82 expressly states that failure to attend the mandatory settlement conference could result in sanctions. This court spent considerable resources attempting to notify the plaintiff of this mandatory settlement conference and the consequences of failing to comply with my order. The plaintiff nevertheless failed to comply. Therefore, I must weigh the first factor against the plaintiff.

The second factor—prejudice caused by noncompliance—also leans toward an order for sanctions. The plaintiff had over one-month's notice of the mandatory settlement conference, yet failed to engage with Cook in good faith settlement negotiations or communicate any inability to attend the mandatory settlement conference before the June 30, 2017 meet and confer deadline. *See* PTO # 80 ¶ 1. Cook, having no indication that the plaintiff would fail to attend, likely spent that time preparing for settlement negotiations. Cook has also expended substantial resources on motions, lawyers, travel and time spent attempting to reach the plaintiff unsuccessfully. Furthermore, because Cook has had to divert their attention away from responsive plaintiffs to attempt to reach the plaintiff in this action, the delay has unfairly impacted the progress of the remaining cases in this MDL.

The adverse effect on the management of the MDL as a whole segues to the third factor: the need to deter this sort of noncompliance. When parties fail to comply with deadlines provided in pretrial orders, a domino effect develops, resulting in the disruption of other MDL cases. Furthermore, I expect to have to evaluate and dispose of numerous motions similar to the one at bar, thereby directing my time and resources to noncompliant plaintiffs at the expense of other plaintiffs in this MDL. This cumbersome pattern goes against the purpose of MDL procedure, and I must deter any behavior that would allow it to continue. *See* H.R. Rep. No. 90-1130, at 1 (1967),

5

*reprinted in* 1968 U.S.C.C.A.N. 1898, 1901 (stating that the purpose of establishing MDLs is to "assure the uniform and expeditious treatment" of the included cases).

*Wilson*'s fourth factor directs the court to consider the effectiveness of lesser sanctions. In light of the evidence, the court opts to impose a monetary sanction on the plaintiff in the amount of $500.00 rather than the greater sanction of immediate dismissal with prejudice. I find that $500.00 is a minimally representative valuation of Cook's expenses. This number accounts for the time and money Cook spent identifying the plaintiff as one of the non-compliant plaintiffs; assessing the effect of her lack of compliance with court orders; and preparing an argument for sanctions. All knowledgeable MDL counsel would consider these efforts, which would have been avoided had the plaintiff followed the court's order, to be worth $500.00, at the least. This course of action is consistent with PTO # 82, which warned the plaintiff of the possibility of a substantial sanction. PTO # 82 ("[A]ny plaintiff who fails to comply with this PTO may be subject to a substantial sanction, including dismissal with prejudice."). *Accordingly, I find that the plaintiff shall pay a sanction of $500.00 to Cook, which if not paid within 30 days of this order, shall result in dismissal of the plaintiff's case against Cook with prejudice without further notice.*

**IV.     Conclusion**

It is **ORDERED** that Cook's motion to show cause is **GRANTED**. It is further **ORDERED** that Cook's motion to dismiss is **TAKEN UNDER ADVISEMENT**. It is further **ORDERED** that, within 30 days, the plaintiff pay Cook a $500.00 monetary sanction and show cause why her case should not be dismissed with prejudice.[1] In the event the plaintiff does not pay Cook $500.00 and show cause within 30 days, the plaintiff's claims against Cook shall be dismissed with prejudice without further notice to the plaintiff.

---

[1] The plaintiff may contact plaintiffs' leadership counsel regarding payment.

The court **DIRECTS** the Clerk to send a copy of this Order to plaintiff via certified mail, return receipt requested, and to counsel. The court further **DIRECTS** the Clerk to post this order on the court's website for 30 days.

ENTER: July 21, 2017

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE